UNITED STATES OF AMERICA *v.* AH SING AND FANNIE GUERRERO. UNITED STATES OF AMERICA *v.* WILLIAM DUNN.

October 2, 1915.

1.   *Penal statutes—Definition of crime—Adultery, fornication*: The statute, Penal Code, secs. 316, 318, sufficiently defines adultery and

fornication in merely providing that those offenses, naming them without further description, shall be punished in a certain manner.

2. *Same—Construction by aid of common-law*: When the name of an offense is used in a statute instead of a full description of it, the common law may be looked to in determining the legislative intent, provided, of course, the common law affords a certain definition.

3. *Indictment—Fornication—Joinder of participants*: One participant in fornication may be indicted without joining the other, though the statute, Penal Code, sec. 318, provides that "each" participant shall be punished.

*Criminal Law:* Motion to quash.

*G. A. Davis* and *C. S. Davis* for defendants Ah Sing and Guerrero.

*J. W. Cathcart* (*Thompson, Milverton & Cathcart* with him) for defendant Dunn.

*Jeff McCarn,* U. S. District Attorney, for the United States.

CLEMONS, J. In the indictment in the first case, an unmarried man and a married woman, having a husband then living other than her co-defendant, are charged, under Penal Code, 316, with adultery, in having had "carnal knowledge of the bodies of each other."

In the indictment in the second case the defendant, an unmarried man, is charged under Penal Code, sec. 318, with fornication in having had "carnal knowledge of the body of . . . an unmarried woman."

In these two cases motions to quash are interposed, which include the grounds that the acts charged are not offenses under the laws of the United States; and that there is no law of the United States defining adultery or fornication.

[1] [2] The basis of these motions is the contention that the statutes do not define adultery in the one case or fornication in the other, but that their only effect is in each case to fix a penalty for an undefined offense. The principle relied on is expressed in the following quotations from

decisions of the Supreme Court:

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid . . . Before a man can be punished, his case must be plainly and unmistakably within the statute." *United States v. Brewer,* 139 U. S. 278, 288.

"It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. 'There can be no constructive offenses and before a man can be punished, his case must be plainly and unmistakably within the statute. *United States v. Lacher,* 134 U. S. 624; Endlich on the Interpretation of Statutes, sec. 329, 2d ed.; Pomeroy's Sedgwick on Statutory and Constitutional Construction, 280." *Todd v. United States,* 158 U. S. 278, 282.

See also *United States v. Wiltberger,* 5 Wheat. 76.

It is urged that the Penal Code does not define adultery or fornication, but merely declares a punishment therefor when it provides in the one case (Penal Code, sec. 316):

"Whoever shall commit adultery shall be imprisoned not more than three years; and when the act is committed between a married woman and a man who is unmarried, both parties to such act shall be deemed guilty of adultery; and when such act is committed between a married man and a woman who is unmarried, the man shall be deemed guilty of adultery;"

and in the other (Penal Code, sec. 318):

"If any unmarried man or woman commits fornication, each shall be fined not more than one hundred dollars or imprisoned not more than six months."

And, it is contended, the court cannot supply a definition of the words "adultery" and "fornication," for the reason that adultery and fornication were not crimes at common law, and that they had no certain, definite meaning either in the common law at the time of the Declaration of Independence or at the time of the enactment of the statutes here involved.

There can be no doubt that where a crime is of a "settled and determinate nature," the law-making body may be taken to define such crime in providing that the offense, merely naming it, shall be punished in a stated manner. So held Justice Story, in considering a statute fixing a punishment for "piracy as defined by the laws of nations." *United States v. Smith,* 5 Wheat. 153, 160-161. So also held the Massachusetts supreme court in the case of *Commonwealth v. Call,* 21 Pick. 509, wherein it is said, at pages 510-511:

"If questions arise in such cases as to what constitutes the offense, recurrence is to be had to well-established definitions sanctioned by books of authority and adopted by long usage, and with reference to which it may be supposed the legislature have acted in the enactment of the law punishing the offence."

So, also, Judge Dole, in the case of *United States v. Lee Sa Kee,* 3 U. S. Dist. Ct. Haw. 262, says:

"Although the section on adultery [the same provision as now contained in the Penal Code] is somewhat clumsily drawn, adultery is a word whose meaning is fully adjudged and settled so far as to express an act of sexual intercourse between a married person and another person not his or her husband or wife. It further defines the offense as not applying to an unmarried woman who may have sexual intercourse with a married man."

The decision in the case of *Lee Sa Kee,* supra, is directly in point on the motion here in the *Ah Sing* case involving adultery. Counsel, however, desire to have it reviewed now, in view of the suggestion of the opinion in *Commonwealth v. Call,* supra, and of what they claim appears from the dictionaries and other sources, that one cannot look to the authorities for any invariable or certain definition of the word. In that opinion it is said:

"It so happens, that on the present question we derive less aid than usual from the lights of the common law, the crime of adultery not being cognizable by the temporal

courts in England as a public offence, but only as a private injury; and hence we have not that distinct character of this crime, well defined and made familiar to us by the books of common law, that would be found to exist in relation to other offenses." 21 Pick. 511.

A careful reading of the context, however, will prove this decision to be a strong, as well as a very interesting, authority against the contention of defendant's counsel. Id., 510-513.

The supreme court of New Jersey happens to have passed on the sufficiency of both the words "adultery" and "fornication" to express a definite, certain idea. In *State v. Lash,* 1 Harrison (16 N. J. Law), 380, 32 Am. Dec. 397, construing a statute which provided a punishment for adultery without defining the offense, the court admitted a difference of opinion among "professional men" as to "what adultery is," but declared it to have arisen from a difference of the codes of law which were in the view of those holding such differences—on the one hand the common law and on the other the ecclesiastical law, and it was held in that case that "sitting as a court of common law" the court must with "no hesitation" follow the common law as its "constitutional guide," 32 Am. Dec. 398, though courts of chancery follow the ecclesiastical law, Id., 398-399. See *State v. Searle,* 56 Vt. 516, 518. And it was found that adultery, though not a crime at common law, was the subject of civil actions and had a well known legal meaning, namely, unlawful sexual intercourse between a man, whether married or unmarried, and a married woman (other than his wife), Id., 400-403, citing Black. Com. 139; Buller, N. P. 26, and the early American commentators, Swift and Reeve. The New Jersey court seems to regard fornication at common law as unlawful sexual intercourse between a man, whether married or unmarried, and an unmarried woman.

The same court in the recent case of *State v. Sharp,* 66 *Atl.* 926, has held that under a statute making fornication

"a misdemeanor", an indictment is sufficient which uses the word "fornication" as "descriptive of the act", without further description or detail,—that the word has "a well-settled meaning," implying "an act with an unmarried woman." Id., 927.

The Indiana supreme court (in the first sentence about to be quoted) goes further than we need to, but its opinion fairly supports the cases just cited. It says:

"Our statute does not define fornication or adultery; but crimes, as we have seen, need not be defined by the statute, and, consequently, the court must judicially declare the definition. Fornication is sexual intercourse between a man, married or single, and an unmarried woman. Adultery is sexual connection between a married woman and unmarried man, or a married man other than her own husband. These definitions are not in accordance with some authorities, but they are with others, and, we think, the better; and they appear to us to be in harmony with the reason of things. We will limit the discussion of this topic to the question of adultery; as when we show what that is, we necessarily show what fornication is, an unlawful sexual intercourse that is not adultery is fornication." *Hood v. State,* 56 Ind. 263, 26 Am. Rep. 21, 24-25.

The Iowa supreme court in *State v. Hasty,* 121 Ia. 507, 96 N. W. 1115-1116, in construing a statute which merely names the crime without further definition, says:

"Adultery at common law was not denounced as a crime. As the basis of a civil right of action it consisted only of a man having sexual intercourse with a married woman other than his wife, thereby introducing the danger of spurious issue of the marriage. Connection with a single woman, though fornication, was not adultery. The same rule seems to have obtained under the Roman law but was radically modified by the ecclesiastical courts, which denounced the offense as the sexual violation of the marriage relation, regardless of whether the offender were male or female. And the definition of the canonical law, according to Wharton, was accepted by every Christian state at the time of the colonization of America and 'is no doubt a part

of the common law brought with them by the colonists of all Christian nationalities.' 2 Wharton on Crim. Law, sec. 1719."

It may be noted that in the *Lash* case, supra, 32 Am. Dec. 400, the court adverted to the fact that the constitution of New Jersey "adopted the common law as a guide." Of the other states whose courts are cited above, the common law is adopted and declared to be in force in Vermont and Indiana, 1 Stimson, Am. Stat. L., 135-136, but it seems not in Massachusetts or Iowa, nor in Alabama, whose court is hereinafter cited. Id. In any event, in none of the foregoing decisions does it appear that the adoption of the common law influenced the conclusion that was reached  The common law is looked to only because, or if, it affords a ready and freely accepted definition of these words "adultery" and "fornication"—and the common law rather than the ecclesiastical law, because common law courts are the courts which have jurisdiction of criminal matters, and such courts are the prototypes of the Federal court, so far as its criminal jurisdiction is concerned.   That equity may follow the broader definitions of the ecclesiastical courts in order to do justice in civil cases is natural, but it is just as natural, and in accord with the theory and policy of criminal law, that a court in the exercise of criminal jurisdiction should take a stricter view; and it cannot be seen that the fact of the difference between the view of the two systems militates at all against a Federal court's seeking the aid of the common law in such a case as the present.

In the opinion of this court, each of the words "adultery" and "fornication," as well shown in the *Lash* case, supra, has a definite meaning in the common law; and the definitions above given are to be looked to in arriving at the intent of Congress here. However, in spite of its clumsy work in this statute (see *United States v. Lee Sa Kee*, 3, U. S. Dist. Ct. Haw. 263), Congress has shown a clear purpose to widen the limits of the offense of adultery, by providing a

punishment for "the act"—which can only mean sexual intercourse—when "committed between a married woman and a man who is unmarried," Penal Code, sec. 316. The common law definition is, therefore, to be modified accordingly. In Vermont, also, an enlargement of the common law definition of adultery has been effected by legislation. *State v. Searle,* 56 Vt. 516, 517-518.

Furthermore, at the time of the original enactment of the statute, March 3, 1887, 24 Stat. 635, 636, the term "adultery" with reference to the criminal law, had acquired the well settled import, as pointed out in the *Hasty* case, supra, of "such sexual intercourse as violates another man's bed—as may entail a spurious issue upon a defrauded husband," *Smitherman v. State,* 27 Ala. 23, 25, though in divorce the term was to be taken in the broader canonical sense, embracing "the infidelity of the husband to the wife." Id. The former definition, in which the "adulteration" of the issue of a married woman, is made the test, is in accord with the common-law definitions above set forth. Beyond doubt, the term "fornication" had at the time of the original enactment of the Federal legislation against sexual immorality, also acquired a well-settled import. And as the term "adultery" had become crystallized, the meaning of the term "fornication" was to be inferred as "sexual intercourse that is not adultery." *Hood v. State* supra.

There remain for consideration the additional grounds of the motion to quash in the case of Dunn defendant, "that the crime attempted to be punished by said section 318 is a joint and not a several crime;" and "that defendant is indicted severally and not jointly with the unmarried woman named in said indictment." These grounds are based on the use of the word "each" in section 318 of the Penal Code, which reads: "If any unmarried man or woman commits fornication, *each* shall be fined," etc.

In overruling a similar ground of objection to an indictment, under a statute that "every person who shall com-

mit the crime of adultery shall be punished," etc., the court said, in *State v. Searle,* 56 Vt. 516, 519:

"The other ground of objection that it is necessary to join both parties in the indictment is not well taken. The provision that both parties shall be punished, etc., does not import that both must be joined in the indictment. *State v. Brown,* 49 Vt. 440; Bish. Cr. Proc. ss. 263, 264, 266; *State v .Davis,* 2 Sneed, 273; Vermont Justice, p. 719."

So, in *State v. Davis,* 2 Sneed (Tenn.) 273, cited by the Vermont court, a statutory provision, that all persons engaged in the same offense shall be embraced in the same indictment, was held to be directory only and to afford no basis of defense to one of several co-offenders who is indicted alone.

[3] The legislative will that "each shall be fined," is directed to the discretion of the prosecuting authorities, and is not a matter of concern to a defendant who is indicted alone for the offense of fornication; it is not a matter of pleading.

"The doctrine is, that since all participants in a crime are severally liable the same as if each had done the whole together, all or any number of them may be charged together, in one count, or each may be indicted separately, at the election of the prosecuting power. Thus, it will not impair an indictment that, of many participants in the crime, only one, or any number less than the whole are made defendants." 1 Bishop's New Crim. Proc., sec. 463.

Though "the peculiar nature of some crimes [as, e. g., conspiracy and riot] is such as to require the indictment to charge guilt on more than one, whether they are made defendants or not," Id., sec. 464, nevertheless it is conceivable that in sexual intercourse one of the parties might be acting "in perfect good faith and without guilty knowledge," and so could not be subject to indictment at all. See *Delany v. People,* 10 Mich. 241, 245 (a case of adultery, however). See, also, *People v. Plyler,* 53 Pac. (Cal.) 553, 554.

There is nothing in the nature of this offense requiring the participants to be joined in an indictment. See, aside from the authorities just cited, 22 Cyc. 373; 9 Enc. Pl. & Pr. 645; also 1 Enc. Pl. & Pr. 308; 2 C. J. 20.

The motion to quash is denied in each case.